GAITHER *v.* KANSAS CITY, ETC., R. CO.

*(Circuit Court, W. D. Tennessee. May 22, 1886.)*

1. NEW TRIAL—INADEQUATE VERDICT FOR DAMAGES.

The rule that the court will not set aside a verdict because of a difference of opinion as to the amount of damages that should have been allowed, is consistently adhered to, and a new trial may be granted, where the judge is not satisfied that the jury acted with full comprehension of the force of the proof and of the charge of the court upon a matter in dispute.

2. SAME—CASE IN JUDGMENT.

Where the jury found a verdict of $250 for personal injury, resulting in the death of a young colored girl, in a suit by her father for his pecuniary interest in her life, and there was an issue whether the parties were domiciled in Arkansas, where a female becomes of age at 18 years, or in Tennessee, where she is not of age until she becomes 21, and upon this issue the proof was unsatisfactory, and the court was not satisfied that its charge was sufficiently definite on the point, a new trial was granted.

3. NEGLIGENCE—ACTION FOR, CAUSING DEATH—MEASURE OF DAMAGES.

Under the Arkansas statute, and those like it, allowing damages for negligence resulting in death, only the pecuniary interest of the plaintiff can be recovered; and this may be even less than $250, under some circumstances,

when we discard the sentiment that any human life is worth more than such a pittance as that, which sentiment the law does not at all recognize as an element of damages; nor any idea of punishment for the negligence.

4. CARRIER—WHO IS A COMMON CARRIER—SKIFF IN THE MISSISSIPPI RIVER.
    Whether a skiff carrying an occupant for pay is a common carrier, in the sense of the rule that in case of collision a passenger is not responsible for the negligence of his own carrier, *quære.*

Motion for New Trial.

The plaintiff's child, a colored girl about 16 years of age, was killed by collision with the defendant's transfer boat in the Mississippi river, near the Arkansas shore, soon after the boat had left the incline of the railway. She was one of the occupants of a skiff coming from a cotton plantation, and had paid the skiffman for her passage, as many persons did who came in that way to Memphis, the skiff being kept at the plantation for that purpose. The steam-boat and skiff came into collision under circumstances enabling them to set up negligence against each other, but it is not necessary now to state the circumstances. The jury found a verdict for $250 for the plaintiff; the court having charged them that the plaintiff and his child were not responsible for any contributory *negligence of the skiffman.*

*Smith & Collier,* for the motion.
*Newman Erb, contra.*

HAMMOND, J. This case presents a question whether persons riding in skiffs on the Mississippi river are "passengers," and the skiffs "common carriers," in the sense of the rule that the passenger is not responsible for the negligence of his carrier in cases of injury by collision. It was ruled in favor of the plaintiff at the trial, but with considerable doubt, particularly in view of the case of *Collins* v. *Davidson,* 19 Fed. Rep. 83. It is true, it is not shown whether the plaintiff in that case was a "passenger" with respect to the fact that he was being carried for pay; but it may be doubtful whether there is not, even where they are carried for hire, an element of foolhardiness in riding in a skiff in the neighborhood and close proximity of passing steamers on this river, that precludes the notion of treating the skiffs as carriers, and assimilating them to carriages on land. It does not now require decision here, for the defendant makes no complaint of the verdict, and on the plaintiff's motion for a new trial the sole question is whether the court should set the verdict aside for inadequacy. It stands precisely upon the same footing as a motion made to set aside a verdict for excessive damages. In neither case should a court substitute its judgment for that of the jury. *Brown* v. *Memphis, etc., R. Co.,* 7 Fed. Rep. 51; *Kirkpatrick* v. *Adams,* 20 Fed. Rep. 287; *Muskegon Bank* v. *Northwestern Ins. Co.,* 19 Fed. Rep. 405; *Lancaster* v. *Providence, etc., Co.,* 26 Fed. Rep. 233.

This was an action for a personal injury resulting in the death of a colored girl about 16 years of age, brought by her father; and the sole

question, under the charge of the court, as to which no exception was taken, was the extent of his *pecuniary* interest in her life. It was urged by defendant that they were citizens of Arkansas where the injury occurred, and under the statute of which state the suit was brought. There she became of age at 18, and it was argued to the jury that he had only a right to her prospective earnings for two years.' It was claimed by the plaintiff that they were citizens of Tennessee, sojourning in Arkansas to work on a plantation. In Tennessee the child would not become of age until 21. This question of citizenship was submitted to the jury, and no exception is taken to the charge on that score; but it is said that the jury possibly did not understand it. I think they did fully, for it was a very intelligent jury. But the proof itself was far from satisfactory, as, perhaps, it might always be with a class of people who are wanting in many of the possessions and situations in relation to which satisfactory circumstances are found to determine a question of domicile or citizenship. I am unable to even guess from the proof, and we can look nowhere else, how the jury arrived at this verdict; but here, again, the trouble is that in all such cases it is impossible to calculate the damages with accuracy from any proof. It is largely a matter of estimation by the jury from the proof, and not calculation.

I wish to avoid wholly a determination of this motion upon the purely sentimental argument that any human life is worth more than $250. The most valuable of lives, the lives of the grandest of men and women, may be worth less than that sum, in an action under Lord CAMPBELL's act, and those of our states, like that under which this suit was brought. A plaintiff may have had less than $250 *pecuniary* interest in the life of any decedent. The sentiment relied on so earnestly here is not at all an element in the action. Nor is the notion of punishment for the negligence. The court so told the jury, and confined them strictly to the cold estimate of pecuniary interest, and I think that is the law. *Lett* v. *St. Lawrence, etc., R. Co.,* 11 Ont. App. 1; S. C. 21 Amer. & Eng. R. Cas. 165. This is one of the most instructive cases on this subject, and represents the general law, as I understand it, everywhere that these acts have been passed. *Little Rock, etc., R. R.* v. *Barker,* 39 Ark. 491; *St. Louis, etc., R. Co.* v. *Freeman,* 36 Ark. 41.

Yet I do not feel content with this verdict; and, while discarding the argument just considered, leaving to the jury its fullest power, and adhering to what I have so often ruled about substituting the judgment of the judge for that of the jury, I fear the verdict may be the result of misapprehension of the force of the testimony on the subject of domicile. If the parties resided in Arkansas, the verdict might be reasonable enough; while if they resided in Tennessee, it might not be adequate. The impression made on my mind by the proof, inadequate as it was, was that with this class of people, going from plantation to plantation to work in the cotton fields, they were,

on the circumstances proven, legally Tennessee people, temporarily in Arkansas. And here the question arises whether the damages should be calculated, so far as they can be subject to calculation at all, according to the Tennessee law, or that of Arkansas, by whose gracious statute any damages are recoverable at all. I thought they might be given according to the Tennessee rule of nonage, but was not sure of it, and am not now. I fear the jury may have been misled by instructions on that point not sufficiently definite. I was not very certain about it, and perhaps the jury were as uncertain after the charge as the court was.

In *Armytage* v. *Haley*, 4 Q. B. 917, there was a verdict of £10 for a broken thigh, and the court granted a new trial, saying: "A new trial on a mere difference of opinion as to amount of damages may not be granted, but here are no damages at all." I do not think that is this case, for, sentiment aside, a father may have a very small pecuniary interest in the life of a young girl, much less than one may have in an uninjured thigh; but I feel here that possibly there may not have been given enough by the jury through my own fault, although counsel have been kind enough to say that they take no exception to the charge.

Again, the impression made on my mind at the trial, and by a careful subsequent reading of the proof, is that the verdict ought to have been for the defendant on the issue of negligence, and I have thought it possible the jury gave this verdict as a mere *solatium* through sympathy for this poor man. If the defendant had asked a new trial, I should grant it on the ground that such was a possible outcome of the trial. I would not set aside the deliberate verdict of a jury on the proof here concerning negligence, either way, for that is the function of the jury to determine; and, although there is this suspicion that they gave a gratuitous *solatium*, I must take it on this motion as conclusively established by their verdict that there was negligence. And I recognize as wise the policy of the defendant to accept the verdict and pay it, rather than go to the expense of a new trial; but at the same time, as the court would have found the fact of negligence for defendant, and the jury, whose province it was, has found it for the plaintiff, and has given a verdict which may have been the result of misapprehension as to proof that was inadequate, and of the charge of the court on that point, there is on my part a doubtful state of mind, which seems to me, when there is no writ of error, and this court must finally determine the case, to make it just to both parties to try the case over again before another jury. It is, at last, at this point that the judge may and should resort to his power to grant a new trial with that mobility of judgment which comprehends within the exercise of sound discretion a reasonable departure from any fixed rule of decision,—and there can be no very fixed rule of judgment in such matters,—and at the same time a consistent and strict adherence to the principle of permitting issues of fact to be once, and once only,

fairly and legally tried, in good faith, by the jury, and not by the court, as our constitution and laws require.

New trial granted.