PENDLETON, APPELLANT, *v.* COWLING ET AL., RE-
SPONDENTS.

[Argued June 18, 1891. Decided July 20, 1891.]

DECISIONS OF THE SUPREME COURT OF THE UNITED STATES—*Enabling Act.*—The decisions of the Supreme Court of the United States are not controlling upon the Supreme Court of this State in the decision of a case, which, at the time of its commencement in the courts of the Territory, was appealable to the Supreme Court of the United States, as under section 22 of the Enabling Act of Congress of February 22, 1889, prescribing the right of appeal upon admission of the State into the Union, a judgment of the State Supreme Court is not reviewable by the Supreme Court of the United States.

TRUST—*Declaration of trust—Liability of beneficiary—Vendor and vendee.*—In the case at bar the purchaser of real estate executed notes, secured by a deed of trust, for the balance of the purchase price, and then conveyed the premises to a third party, the deed providing that the conveyance was subject to the above-mentioned deed of trust, and that "all of said notes and the interest thereon the grantee assumes and agrees to pay." It appeared that, while such third party had taken the conveyance in his own name, he and two others had purchased the premises together, and that he had executed a declaration of trust to the others reciting such fact, defining their respective interests, and declaring that the conveyance had been so made to such third party for their mutual benefit and convenience and to facilitate the sale of the premises. In an action brought by the payee of the notes, *held,* that the recitals of the last mentioned deed and declaration of trust did not create a personal liability on the part of the beneficiaries thereof.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action on promissory notes, the payment of which was alleged to have been assumed by defendants Shober and Adams by

virtue of their acceptance of a declaration of trust.    Their demurrer to the complaint was sustained by HUNT, J.

*McConnell & Clayberg*, for Appellant.

. The main question to be determined is, can a mortgagee maintain an action against the grantee of his mortgagor, who has assumed the payment of the mortgage as a part of the consideration of the purchase of the equity of redemption?    "The element which lies at the bottom of the assumption of payment of a mortgage debt by the grantee, and which alone gives it efficacy according to the theory held by some courts, is the fact that the mortgage debt is included in the purchase price as a constituent part thereof, and the grantee actually applies or secures to his grantor only the balance of the gross price after deducting such net price."    (*Strong* v. *Converse*, 8 Allen, 557; 85 Am. Dec. 732; *Drury* v. *Tremont etc. Co.* 13 Allen, 168, 171; *Trotter* v. *Hughes*, 12 N. Y. 74; *Binsu* v. *Paige*, 1 Abb. N. Y. App. 138; *Collins* v. *Rowe*, 1 Abb. N. C. 97; *Stebbins* v. *Hill*, 29 Barb. 524; *Miller* v. *Thompson*, 34 Mich. 10; *Dunn* v. *Rodgers*, 43 Ill. 260; Pomeroy's Equity Jurisprudence, § 1206, and notes.)    When a deed executed by the grantor contains a clause sufficiently showing such intent, the acceptance thereof by the grantee consummates the assumption and creates a personal liability on his part, which inures to the benefit of the mortgagee, as though he had himself executed the deed.    When grantee thus assumes payment of the debt as a part of the purchase price, the lands in his hands is not only made the principal fund for payment of the debt, but he himself becomes personally liable to the mortgagee or other holder of the mortgage, and as between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes surety with all the consequences flowing from the suretyship.    (*Converse* v. *Cook*, 8 Vt. 164; *Curtis* v. *Tyler*, 9 Paige, 432, 435; *Halsey* v. *Reed*, 9 Paige, 446, 451; *King* v. *Whitely*, 10 Paige, 465, and note; *Burr* v. *Beers*, 24 N. Y. 178; 80 Am. Dec. 327; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; 13 Am. Rep. 556; *Ricard* v. *Sanderson*, 41 N. Y. 179; *Spaulding* v. *Hallenbeck*, 35 N. Y. 204; 39 Barb. 79; *Trotter* v. *Hughes*, 12 N. Y. 74, 78; 62 Am. Dec. 137; *Huyler's*

*Ex'rs* v. *Atwood*, 26 N. J. Eq. 505; *Lenning's Estate*, 52 Pa. St.
135, 138; *Hoff's Appeal*, 24 Pa. St. 200; *Miller* v. *Thompson*,
34 Mich. 10; *Crawford* v. *Edwards*, 33 Mich. 354; *Bishop* v.
*Douglass*, 25 Wis. 696; *Thompson* v. *Bertram*, 14 Iowa, 476;
*Corbett* v. *Waterman*, 11 Iowa, 86; *Dean* v. *Walker*, 107 Ill.
540; 47 Am. Rep. 467; *Heim* v. *Vogel*, 69 Mo. 529; *Fitzgerald*
v. *Barker*, 70 Mo. 687; 85 Mo. 13.) Where the deed is silent
as to the assumption of payment of the mortgage debt by the
grantee, and such assumption was made, it may be shown by a
parol promise, and creates a personal liability on the part of
the grantee. (*Strohauer* v. *Voltz*, 42 Mich. 444; *Drury* v. *Tremont etc. Co.* 13 Allen, 168; *Bowen* v. *Kurtz*, 37 Iowa, 239;
*Bolles* v. *Beach*, 22 N. J. L. 680; 53 Am. Dec. 263.) "As
between the mortgagee and the grantee, although he may treat
both the grantee and the mortgagor as debtors, and may enforce
the liability against either, still, after receiving notice of the
assumption, he is bound to recognize the condition of the surety-
ship, and to respect the rights of the surety unless he has subse-
quent dealings with them." (*Calvo* v. *Davies*, 73 N. Y. 211,
215; 29 Am. Rep. 130; *Marshall* v. *Davies*, 78 N. Y. 414, 420,
421; *Ayers* v. *Dixon*, 78 N. Y. 318, 322; *Thorp* v. *Keokuk etc.
Co.* 48 N. Y. 253; 3 Pomeroy's Equity Jurisprudence, p. 192,
n. 1.)

The execution of the deed by Cowling to Towner, and its ac-
ceptance by Towner, binds Towner as effectually as if the deed
had been signed *inter partes*. (*Trotter* v. *Hughes*, 12 N. Y. 74;
62 Am. Dec. 137; *Dean* v. *Walker*, 107 Ill. 544; 47 Am. Rep.
467; *Edwards* v. *Crawford*, 33 Mich. 354.) If, then, Towner,
as grantee of the deed, having accepted it, and having entered
into a contract with his co-defendants Shober and Adams for
the joint purchase of said land, each to be interested to the ex-
tent that he contributes of his means towards the payment,
Towner holds as trustee for Shober and Adams to the extent
that they so contributed to pay for said land. The contract
was made in the State of Missouri. The law of Missouri pro-
vides that " all declarations or creations of trust or confidences
in any lands, tenements, and hereditaments shall be manifested
and proved by some writing signed by the party who is by law
able to declare the trust," etc.

There is no conflict in the decisions of the Supreme Court of Missouri on this subject. In the case of *Fitzgerald* v. *Barker*, 70 Mo. 687, the Supreme Court of Missouri holds, that "it is well established in this State, that a party for whose benefit a stipulation in a simple contract is made may maintain a suit on such stipulation in his own name." Also in the case of *Heim* v. *Vogel*, 69 Mo. 529, it was directly decided that "when a grantee accepts a deed-poll containing a statement that the land conveyed is subject to a mortgage, which the grantee assumes and agrees to pay, a promise with the grantee for the benefit of the mortgagor is implied therefrom, and the grantee thereby becomes personally liable to the mortgagee for the mortgage debt." As bearing upon these questions, see the following cases decided in the Supreme Court of Missouri: *Meyer* v. *Lowell*, 44 Mo. 328; *Flanagan* v. *Hutchinson*, 47 Mo. 237; *Rogers* v. *Gosnell*, 51 Mo. 466; *Schuster* v. *Kansas City etc. R. R. Co.* 60 Mo. 290; *Cress* v. *Blodgett*, 64 Mo. 449; *Fitzgerald* v. *Barker*, 13 Mo. App. 195; S. C. 85 Mo. 13; S. C. 96 Mo. 661; 9 Am. St. Rep. 375.

The combined effect of Cowling's deed to Towner, and his acceptance of the same by Shober and Adams, creates an interest in the land sold and vests the same in Shober and Adams, as the *cestui que trust*, of which Towner is the trustee, and takes the whole of the transaction out of the Statute of Frauds. They would have been able, if the venture had been a successful one, by suit to have compelled Towner to account to them for their share of the proceeds of the sale of said land. Then there is no reason why they should not be held responsible for their promise to pay the notes which was a part of the consideration, and which they expressly agreed to pay. It is not necessary that this agreement to pay these notes should have been in writing.

*Toole & Wallace,* and *Shober & Adams,* for Respondents.

The plaintiff is not the real party in interest, and cannot sue on the contract between the mortgagor and his grantees. It was not made for his benefit; he never had adopted it; there was no mutuality or binding force in it as to him, and he has not changed his condition upon the strength of it; nor has the

mortgagee become insolvent, or anything occurred to give him either a legal or equitable cause of action. (*James* v. *Day*, 37 Iowa, 164; *Willard* v. *Wood*, 135 U. S. 313; *National Bank* v. *Grand Lodge*, 98 U. S. 123; *Keller* v. *Ashford*, 133 U. S., 620, et seq.; *Crowell* v. *Hospital*, 27 N. J. Eq. 655; *Crowell* v. *Currier*, 27 N. J. Eq. 152; *Biddel* v. *Brizzolaro*, 64 Cal. 354; Bishop on Contracts [ed. 1891], 1220; *Johnson* v. *Zink*, 51 N. Y. 333.) The decisions in Missouri are conflicting on this subject. (*Mason* v. *Barnard*, 36 Mo. 384; *Thornton* v. *Smith*, 7 Mo. 86.) Those decisions which sustain the right of the mortgagee to maintain an action at law against the grantee in such a deed (and they are but few in number) do so on the theory that the express covenant to the grantor constitutes as' well an implied contract with the mortgagee, i. e., that the mortgagee as the real beneficiary assumes the attitude of a party to the contract, and that therefore by operation of law a contract relation arises between himself and the grantee. The great mass of decided cases, as well as of those cited by appellant, deny the right of the mortgagee to recover in a suit at law as upon the contract, and also deny that there is any direct or indirect obligation enforceable in equity, and though permitting a recovery under certain circumstances in equity, they base it upon these grounds: *First.* As between mortgagee and mortgagor, the latter is always as well after as before the execution of the deed the direct debtor. *Second.* As between the mortgagor and his grantee, only the latter has become principal debtor, the former a mere surety. *Third.* The mortgagee failing to collect on the legal obligation of his direct debtor, and being thus placed where he must *otherwise lose his debt,* will be permitted in equity, under these circumstances alone, to avail himself of all securities (among others this covenant) which his debtor in his relation of surety to the grantee in the deed may have taken for his own protection. This privilege extended to the mortgagee in equity is a mere privilege, and will never be granted except on necessity to prevent loss of the debt, and this necessity involves the utter inefficiency of legal remedies against his direct debtor.

The law of the forum and not that of the place of contract controls the remedy in this case. (*Keller* v. *Ashford*, 133 U. S.

610.) This suit was brought while Montana was a Territory, and under such circumstances that the Supreme Court of the United States was a court of last resort. Its decisions were controlling. This is all that the parties litigant could *then* expect, and there would seem to be no good reason why the decisions of that court should not prevail. The law of the former obtaining in such cases at the time should be respected now, unless there is reason for not doing so. No legislation has been had necessitating any change, and this case, in so far as anything before it is concerned, stands as if the entire rights of the parties were to be determined as they would have been determined had Montana not become a State. The transition from a territorial condition to statehood *should* make no difference in this matter, and it is even questionable whether it *could* under the laws applicable thereto. Whether the case is not appealable to that court is an open question. But assuming that it is not, we insist that the decisions of that court should control under the policy announced in *Sullivan* v. *City of Helena*, 10 Mont. 134. It will be seen that *Keller* v. *Ashford*, 133 U. S. *supra*, was a suit in *equity*, and the court there decided that an *adoption* of the contract between the mortgagor and his grantee, whereby such grantee as a part of the consideration in the purchase agreed to pay the mortgagee his mortgage debt, is necessary to support an action either in *law* or *equity* by the mortgagee against such grantee. There is no averment in this complaint that the plaintiff had adopted the contract narrated by him, so as to identify him with it in any way, and thereby give rise to a cause of action, either legal or equitable. The court says: " In *equity, as at law*, the contract of the purchaser to pay the mortgage being *made* with the *mortgagor*, and *for his benefit only*, creates no direct obligation of the purchaser to the mortgagee." Here in this action to recover a money judgment alone, without asking any other relief, plaintiff relies upon a narration of the above facts, as being sufficient to support his action. The Supreme Court of the United States, in the case from which the quotation is made, also in *Willard* v. *Wood*, 135 U. S., and *National Bank* v. *Grand Lodge*, 98 U. S. *supra*, and *Cragin* v. *Lovell*, 109 U. S. 194, and in *Keller* v. *Ashford*, from which we quote above, adopts the language of Justice Depue,

in which he says: "The equity in which his *relief depends* is the right of the mortgagor against his grantee, to which he is permitted to succeed by *substituting* himself in the place of the mortgagor." In the case at bar, instead of setting up such a substitution, both mortgagor and his grantee are sued, and the right to recover based purely and simply upon plaintiff's rights in the contract between the mortgagor and his grantee, on account of being mortgagee; while the decisions say, under such condition of things, he is a stranger to such contract, not the beneficiary, and cannot sue either in law or equity.

BLAKE, C. J.—This action was commenced October 17, 1889, by Pendleton, the plaintiff and appellant, against Cowling, Towner, Shober, and Adams, to recover the amount of the principal and interest of certain promissory notes. The court below sustained, December 30, 1890, the demurrer of Shober and Adams to the second amended complaint, and, upon the election of the plaintiff to abide by his pleadings, entered judgment for said defendants for their costs.

We are required to review this ruling, and the material facts should be fully stated. It appears that Pendleton owned, April 7, 1887, a certain tract of land in the county of Jackson, State of Missouri, and then sold it to Cowling for the sum of $91,000, of which the sum of $31,000 was paid in cash. Cowling executed to Pendleton three promissory notes, of $20,000 each, for the remainder of the purchase price, which were due, respectively, in one, two, and three years from such date, with interest at the rate of eight per cent per annum, and were signed by T. F. Sneding, as security for Cowling. Pendleton then delivered to Cowling a warranty deed for the land, which was recorded April 7, 1887, in said county of Jackson. At the same time Cowling executed to W. S. Wells a deed of trust upon the premises to secure the payment of the notes, which was likewise recorded. This instrument provided that if Cowling and Sneding should fail to pay the notes, or any part thereof, when any of them became due, the whole should become payable. The first note matured April 10, 1888, and was not paid.

Cowling sold, October 17, 1887, this land to Towner, Shober, and Adams for the sum of $201,501, but the deed was executed

to Towner alone, and also recorded in the State of Missouri. It is provided in the deed of Cowling to Towner that the conveyance is subject to the deed of trust from Cowling to Wells, and that "all of said notes and interest thereon, the grantee assumes and agrees to pay." The complaint alleges that "the payment of said three promissory notes of $20,000 each was a part of the consideration" of this sale. The deed was executed to Towner, who was a resident of the State of Missouri, for the convenience of parties who might wish to buy said land, the said Shober and Adams being residents of this State. On the day of the delivery of the deed by Cowling, Towner executed a declaration of trust, and one copy thereof was delivered to Shober and Adams, respectively.

This instrument, which was signed and acknowledged solely by Towner, contains the following recitals: That Towner, Shober, and Adams have purchased of Cowling the land described in the foregoing deeds, "for the price and sum of $201,500, all of said consideration being paid save the deferred payment of three notes of $20,000 each, secured by a deed of trust executed by Parnell C. Cowling to James Pendleton, . . . . and subject to the conditions of the deed;" that the interest of purchasers is as follows: Towner, three fifths; Adams, one fifth; and Shober, one fifth; that said parties "have consented and agreed that for their mutual benefit, convenience, and accommodation, and for the purpose of facilitating the sale and management of said real estate, and the transfer thereof in case of sale, the conveyance of said real estate be made to the said Oscar M. Towner, subject to a deed of trust to secure the aforesaid deferred payments: Now, therefore, in consideration of the premises, the said Oscar M. Towner hereby expressly declares that he holds the above-described real estate in trust for himself, and all the parties hereinbefore named, according to their respective interests hereinbefore stated; and the said Oscar M. Towner hereby promises and agrees and binds himself to sell and convey the real estate in accordance with the direction of said parties in interest, and appropriate the proceeds derived from said sale in the manner directed by all of said parties in interest, and to hold said real estate as aforesaid until all of said parties shall direct otherwise. In

witness whereof the said Oscar M. Towner has hereunto set his hand and seal the day and year first above written; three original drafts of this declaration being executed for use and benefit of said parties in interest.  O. M. TOWNER.  [Seal.] Acknowledged, Missouri form, October 20, 1888." The first paragraph of this instrument is in these words: "This article of agreement, made and entered into this seventeenth day of October, 1887, by and between Oscar M. Towner, of the county of Jackson, State of Missouri, party of the first part, and I, William Adams, and John H. Shober, both of the city of Helena, Territory of Montana, parties of the second part, witnesseth." It is not alleged that this agreement was recorded.

The complaint sets forth the statutes of the State of Missouri, which require declarations of trust to be in writing, and signed by the party who is legally enabled to declare the same. It is further alleged that Towner, Shober, and Adams jointly assumed the payment of the said notes, and that Shober and Adams accepted the declaration oi trust. Wells, as the trustee, sold August 23, 1888, the land for the sum of $20,131, " under the provisions of the deed of trust," and the amount, after deducting the expenses oi the sale, was credited upon the first of said notes.

Does 'the complaint state facts sufficient to constitute a cause of action? It is conceded that no other written instruments were executed by the parties than those which are mentioned in the complaint, and the liability of the respondents to pay the foregoing notes depends upon their interpretation. Counsel have treated the case upon this theory, and we have been governed accordingly, in considering the legal propositions which have been discussed. When, therefore, it is alleged that Shober and Adams "jointly assumed with the said Towner the payment of the aforesaid three notes," it must be understood that this language refers to the effect of the deeds and declaration oi trust, and not to acts which are not set forth in these documents or the complaint.

This action was commenced in the courts of the Territory oi Montana, and the amount in controversy was sufficient to give to the aggrieved party the right of appeal to the Supreme Court of the United States. If our judgment can be reviewed, the right of the parties must be settled by the decisions of that

tribunal, and our field of inquiry would be limited. The Enabling Act of Congress for the admission of Montana into the American Union, approved February 22, 1889, contains this section : " 22. That all cases of appeal or writ of error heretofore prosecuted, and now pending in the Supreme Court of the United States, upon any record from the Supreme Court of either of the Territories mentioned in this act, or that may hereafter lawfully be prosecuted upon any record from either of said courts, may be heard and determined by said Supreme Court of the United States; and the mandate of execution or of further proceedings shall be directed by the Supreme Court of the United States to the Circuit or District Court hereby established within the State succeeding the Territory from which such record is or may be pending, or to the Supreme Court of such State, as the nature of the case may require; . . . . and each of the Circuit, District, and State Courts, herein named, shall respectively be the successor of the Supreme Court of the Territory, as to all such cases arising within the limits embraced within the jurisdiction of such courts, respectively, with full power to proceed with the same, and award mesne or final process therein; and that from all judgments and decrees of the Supreme Court of either of the Territories mentioned in this act, in any case arising within the limits of any of the proposed States prior to admission, the parties to such judgment shall have the same right to prosecute appeals and writs of error to the Supreme Court of the United States as they shall have had by law prior to the admission of said State into the Union." (25 Stats. U. S. 682.) This is the sole provision which controls the right of appeal in the case at bar, and it is evident that the same is not embraced in the above clauses of the act of Congress. Some of these clauses owe their origin to the decisions of the Supreme Court of the United States in causes that were pending during the change of Territories into States. (*Hunt* v. *Palao*, 4 How. 589; *McNulty* v. *Batty*, 10 How. 72.) It is held in *Hamilton* v. *Kneeland*, 1 Nev. 60, that a case which was brought in the District Court, and appealed to the Supreme Court of the Territory of Nevada, and determined by the Supreme Court of the State, cannot be taken to the Supreme Court of the United States upon the ground that the Organic Act of the Territory

allowed such appeal when the action was commenced. Chief Justice Waite, in *Baltimore etc. R. R. Co.* v. *Grant,* 98 U. S. 398, said: "It has universally been held that our appellate jurisdiction can only be exercised in cases where authority for that purpose is given by Congress. It is equally well settled that, if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law." (See cases there cited, and *Gordon* v. *United States,* 117 U. S. 704.)

It is alleged in the complaint that the respondents accepted the deed from Cowling, and also the declaration of trust by Towner, but it does not appear that Towner or Shober or Adams ever performed any act concerning this land, or enjoyed the possession thereof. The diligent labor of counsel, and an independent examination upon our part, have failed to produce an authority possessing the remarkable features which have been detailed. The conveyances and deed of trust, which are referred to in the complaint, are not pleaded in *hœc verba,* and their effect is not always defined with certainty. It should be borne in mind that this is not an action for the foreclosure of the deed of trust and the recovery of a judgment against Shober and Adams for the deficiency. The property has been disposed of by the trustee in the State of Missouri, and, according to our view, there is only one question for our solution. Did the respondents, by virtue of the foregoing documents, become liable for the payment of such deficiency? This is answered by the conditions of the contracts of the parties. The deed from Cowling to Towner contained this clause: "All of said notes and interest thereon the grantee assumes and agrees to pay." The grantee was Towner and not Shober or Adams, and his assumption of this obligation cannot be disputed. The bare reasons for this transaction are immaterial, but the pertinent fact is that this agreement was not made by Shober or Adams.

Chief Justice Shaw, in *Huntington* v. *Knox,* 7 Cush. 371, said: "When a contract is made by deed under seal, on technical grounds, no one but a party to the deed is liable to be sued upon it; and therefore, if made by an agent or attorney, it must be made in the name of the principal, in order that he may be a party, because otherwise he is not bound by it." The Supreme Court of the State of Missouri, in *Worley* v. *Dryden,*

57 Mo. 226, said: "The deed is always the best evidence, in the first place, of the intention of the parties, and, before it can be altered or changed in its legal import, convincing and satisfactory evidence must be adduced for that purpose."

What, then, is the precise language of Towner in the declaration of trust? " All of said consideration being paid save the deferred payment of three notes of $20,000 each, secured by a deed of trust executed by Parnell C. Cowling to James Pendleton;" and that the parties thereto have consented that " the conveyance of said real estate be made to the said Oscar M. Towner, subject to a deed of trust to secure the aforesaid deferred payments." While Towner was the owner of three fifths of this property, he sustained towards Shober and Adams the relation of a trustee for the remainder. (*Seymour* v. *Freer,* 8 Wall. 202.) The declaration of trust " was precisely the instrument which the statute requires to show that the trustee was not the owner of the land by virtue of conveyances to him absolute on their face." (*Wright* v. *Douglass,* 7 N. Y. 564.) " It must also be observed that, if a trust is declared in writing," says Mr. Perry in his work on Trusts, " courts never permit parol proof of a trust to contradict an intention expressed upon the face of the instrument itself, for that would be to allow parol evidence to vary, contradict, or annul a written instrument." (Vol. 1 [2d ed.], § 76, and cases cited.)

The authorities hold that the above words of the declaration of trust, if inserted in a deed, do not make the grantee liable for the payment of such an encumbrance upon the land. Mr. Jones, the learned author of the work on Mortgages, says : " A deed which is merely made subject to a mortgage specified, does not alone render the grantee personally liable for the mortgage debt. To create such liability, there must be such words as will clearly import that the grantee assumed the obligation of paying the debt. It is not necessary that any particular formal words should be used, but that the intention to impose upon the grantee this obligation should clearly appear. A purchaser of land accepting a deed expressly conveying it subject to a mortgage, and excepting it from the covenants, is not himself personally liable to pay it, unless he covenants to do so." (Vol. 1 [1st ed.], § 748, and cases cited; *Elliott* v. *Sackett,* 108 U. S.

132; *Shepherd* v. *May*, 115 U. S. 505.) The litigation in these cases had its origin in the sales of property under a trust deed. The court held in *Fiske* v. *Tolman*, 124 Mass. 254; 26 Am. Rep. 659, that a promise to pay the mortgage debt cannot be inferred from the acceptance of a deed containing this clause: "Subject, however, to a mortgage . . . . of $7,000, which is part of the above-named consideration." (Wiltsie on Mortgage Foreclosure, §§ 608, 610, 613, and cases cited.) Mr. Wiltsie says: "Whether a personal liability is assumed in any case is always dependent on the intention of the parties; unless the parties have declared this intention in express words, no liability will be incurred. If the deed merely recites that the land is taken subject to a certain mortgage, there will be no personal liability. Neither will the words 'under and subject' to a mortgage, which is specified, import a promise to pay, nor create a personal liability." (§ 615.) We have consulted numerous cases, and do not hesitate to assert this to be the general rule.

These contracts were executed within the State of Missouri, in relation to land therein, and it should be noticed that her courts have reiterated these principles. In *Hall* v. *Morgan*, 79 Mo. 47, Mr. Justice Sherwood in the opinion said: "Nor is the view entertained that the words 'subject to a mortgage,' contained in the deed last referred to, have any bearing on this controversy, since they were only such words as the law would imply. . . . . Unless there was an express agreement to that effect, he (the purchaser) would not be personally liable for the mortgage debt, even though the deed under which he claims had conveyed the property therein mentioned, 'subject to an outstanding mortgage.' (2 Washburn on Real Property, 113.) Unless the deed recites words importing on the part of the grantee a personal liability for the debt, such words as are quoted above will be regarded as a merely descriptive clause, or one inserted as restrictive of the covenants of warranty from the grantor. (2 Washburn on Real Property, 209.)" The Supreme Court of that State has also held that, "if a grantee takes a deed containing a recital that the land is subject to a mortgage, which the grantee assumes or agrees to pay, a duty is imposed on him by the acceptance, and the law implies a promise to per-

form it, on which promise, in case of failure, *assumpsit* will lie." (*Heim* v. *Vogel*, 69 Mo. 529; *Fitzgerald* v. *Barker*, 70 Mo. 685.)

Whenever a judgment has been entered for a deficiency against the grantee of the mortgagor, the obligation is created by the direct assumption of the debt which has been secured. The terms of the declaration of trust are easily understood, and we must disregard the allegations of the complaint which are inconsistent therewith. The plain inference from this instrument is that the respondents have not undertaken to pay said note to the appellant. Its recitals are of matters which, under the authorities, cannot serve as the foundation of a personal liability upon the part of Shoeber and Adams to satisfy the demand of the mortgagee in this action. The complaint fails to show that either of the respondents manifested the intention to assume the payment of the notes to Pendleton, and the action of the court below in sustaining the demurrer was correct.

It is therefore ordered and adjudged that the judgment be affirmed.

*Affirmed.*

Hᴀʀᴡᴏᴏᴅ, J., and Dᴇ Wɪᴛᴛ, J., concur.