LINGE'S ADM'R v. ALASKA TREADWELL CO.

(First Division.  Juneau.  March 12, 1906.)

No. 410A.

1. NEW TRIAL (§ 128*)—MOTION—GROUNDS TO BE PLAINLY SPECIFIED.
On motion for a new trial "because the court erred in denying the motion of defendant to instruct the jury to return a verdict for the defendant," the court will not consider whether or not

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

the evidence was insufficient to support the verdict, since that ground of objection is not plainly specified in the motion.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 257–262; Dec. Dig. § 128.*]

2. NEW TRIAL (§ 71*)—SUFFICIENCY OF THE EVIDENCE IN JURY TRIAL.

A new trial will not be granted for insufficiency of the evidence to justify the verdict, where there was a well-defined issue of fact and a fair conflict of evidence, though the judge upon the same evidence would have found different from the jury.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 144, 145; Dec. Dig. § 71.*]

3. DEATH (§ 99*)—DAMAGES—EXCESSIVE VERDICT.

In a suit for wrongful death through negligence, the jury returned a verdict for $10,000. *Held*, under section 353, Alaska Code of Civil Procedure, the verdict was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

4. NEW TRIAL (§ 32*)—GROUNDS—IMPROPER REMARKS OF COUNSEL TO JURY.

When counsel for the plaintiff used language to the jury tending to prejudice them toward the defendant, but upon objection withdrew same, and the court specifically instructed the jury to disregard same, and the verdict was clearly within the statute, *held* not a ground for a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 47; Dec. Dig. § 32.*]

5. COURTS (§ 52*)—ABOLISHMENT OF PROBATE COURT—EFFECT.

Administration on the estate of Linge was begun in the probate court in Douglas Island precinct. Afterwards by an order of the district court the Douglas Island precinct was abolished, the court closed, and the records and territory transferred to the Juneau precinct. *Held*, that the probate court in Juneau precinct had no jurisdiction to remove the administrator and appoint his successor; that the cases pending in the Douglas Island precinct were suspended by the order abolishing the court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 52.*]

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

6. APPEAL AND ERROR (§ 460*)—SUPERSEDEAS.

An appeal from a probate court in Alaska to the district court does not operate as a supersedeas.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 460.*]

Motions for new trial and in arrest of judgment.

Z. R. Cheney and R. W. Jennings, for plaintiff.

Malony & Cobb, for defendant.

GUNNISON, District Judge.  The motion for a new trial and that in arrest of judgment were duly filed and argued herein.  The second ground upon which defendant bases its motion for a new trial is identical with that upon which it relies in its motion in arrest of judgment.  This ground will be considered after the other ground assigned as reason for a new trial has been examined.

The first ground set out is:

"Because the court erred in denying the motion of defendant to instruct the jury to return a verdict for the defendant."

The plaintiff urges that under this the court may not consider the question as to whether or not the evidence was insufficient to support the verdict.  It is unnecessary to enter into an extended consideration of the cases cited by counsel for either party, because, in the opinion of the court, plaintiff's position was well taken under sections 226 and 229 of the Code of Civil Procedure.  The latter section (229) declares with great clearness that:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court."

The ground stated in the motion does not specify the reason relied upon therein to be the insufficiency of evidence to jus-

tify the verdict. On the contrary, it is charged that the court "erred in denying the motion" to direct a verdict. And though, when arguing upon this ground, defendant's counsel discussed the sufficiency of the evidence, as well as questions of law, the court is of the opinion that under section 226 this assignment must be deemed to have reference to error in law, for the reason that it does not plainly specify that it is aimed at the insufficiency of the evidence. The question of law urged thereunder is the same as that urged in the second ground, and will therefore be discussed in connection therewith.

But in the event that the contention of plaintiff had not been well taken, and that the evidence should have been considered on these motions, the result would have been no different; for the mind of the court, expressed on the trial, in ruling on the motion for a directed verdict, has not changed. There then appeared to the court to be a clearly defined question which should be submitted to the jury. And while the weight of evidence upon that question might not have appealed to the court as it evidently did appear to the jury, the question as to the weight of testimony was for the jury to determine, and not for the court. The court refused to direct a verdict on the ground of insufficiency of evidence, and, were that question properly before the court on this motion, the ruling of the prior occasion would not be changed at this time.

The third reason assigned for a new trial is that:

"The verdict of the jury is excessive in amount, and was manifestly rendered under the influence of passion and prejudice."

The jury returned a verdict for the plaintiff in the sum of $10,000. Under section 353 of the Code of Civil Procedure, this was the maximum amount that could be returned in an action of this kind. But defendant contends that amount to be excessive, and that the verdict was rendered under the influence of passion and prejudice. The quantum of damages in this, as in most cases, is intimately blended with questions

of fact, and must be arrived at from the facts in evidence. It was a question for the jury. 1 Sedg. on Damages, 19. If the verdict be excessive, the power to disturb it rests in the discretion of the court. But this discretion does not supplant that of the jury. The court must decide whether there is enough evidence to support the verdict, and if there is sufficient the discretion of the court ceases. 3 Sedg. on Damages, § 1321. If the evidence is such as to satisfy the mind of the court that the jury has not abused its powers, then the court, being loth to interfere with the findings of the jury, should not disturb it. 8 Am. & Eng. Ency. (2d Ed.) 630, 631; Ross v. Railroad (C. C.) 44 Fed. 44; Dwyer v. St. L. & S. F. R. R. (C. C.) 52 Fed. 87. A consideration of the evidence of the age, habits, earnings, and savings of Linge indicates that, while the verdict is larger than the court would have voted for, had it been a juror trying the case, the verdict is not excessive.

The damages which the law contemplates, in providing the right of action, are by way of compensation to those injured, not as a punishment of the party responsible for the injury. In the eye of the law, the estate has been injured by the death of Linge. If the death of Linge and the consequent injury to the estate are due to the negligence of the defendant, then the defendant must compensate the estate for the injury which its negligence has caused. But by what rule shall that compensation be fixed? Linge, at the time of his death, was 25 years of age. The American Mortality Tables fix the life expectancy of a man of that age at 38 years. Is the test what Linge would have earned in those 38 years, or what he would have saved? The very theory of compensatory damages determines that, I think. His estate could profit only by the net result of his labor, or in other words what he would save in that time must be the test. I am aware that the courts of this country are not unanimous upon this

subject; but the weight of authority and reason seems to support this view. Ross v. T. & P. Ry. Co. (C. C.) 44 Fed. 44. The only evidence of his savings is that in 8 months Linge sent to Norway $430. At this rate his savings would amount to over $50 per month. His wages being about $3.50 per day, on this basis, an estimate shows an annual saving of something like $300, or during his life expectancy of more than $10,000, the amount of the verdict. These figures are merely an application of the above test to the case at bar, in order to ascertain if the verdict be excessive. As was said by the Supreme Court of Oregon, in Carlson v. Oregon S. L. Ry. Co., 21 Or. 450, 28 Pac. 497:

"Nor do we think any rule can be laid down in this class of cases by which the damages can be ascertained with even approximate mathematical certainty. As we have indicated before, the amount must depend very much on the good sense and sound judgment of the jury and upon the facts in each particular case."

See, also, Gaither v. Railroad Co. (C. C.) 27 Fed. 546.

And now what of the passion and prejudice charged? While it is a well-known fact that in many cases, where a corporation is on one side and an individual on the other, juries are wont to favor the individual, the court cannot say that in the case at bar the jury exceeded its powers and rendered a verdict in excess of that which the evidence warranted. This being true, the jury could not have been influenced by passion or prejudice.

The fourth ground is that:

"The verdict of the jury was manifestly based upon and vitiated by the argument of counsel for the plaintiff to the effect that defendant company was owned by the Rothschilds of England," and "that the full amount prayed for would not amount to 1 per cent. of its annual income, and other extraneous matters of similar nature."

The court does not think this ground to be well taken, in view of the evidence, as just considered, and the situation at

the time of the trial.   After counsel for the plaintiff made the remark, as charged by defendant, counsel excepted thereto.   Not only did counsel for plaintiff withdraw the statement and request the jury not to consider it, but the court, both at the time and in its charge, emphatically instructed the jury that it must disregard that and all other remarks of counsel which were not borne out by the evidence.   The practice of injecting remarks of that character into arguments before the jury is all too prevalent at this bar, and is most pernicious. The court has repeatedly cautioned various counsel upon this subject, pointing out the impropriety and unfairness of it.   No permanent good can come of it.   A perversion of justice always results, and the bar should cease to follow it.   In this instance, however, the statement of counsel for plaintiff and the instruction of the court were such that it would be improper to set the verdict aside.   Certainly is this true when the evidence as to the earning capacity, life expectancy, etc., are sufficient in themselves to support the verdict.   This ground, then, cannot avail to secure a new trial, however great may have been the unfairness and impropriety of the language used.

Having disposed of the third and fourth grounds of the motion, let us consider the second reason, which, as I have stated, is similar to the first, and which is advanced both for a new trial and for the motion in arrest of judgment.   The reason is stated as follows:

"Because the court erred in instructing the jury that Z. R. Cheney was the duly appointed, qualified administrator of the estate of Ole Linge, deceased, and had full capacity to maintain this suit."

To the mind of the court, this is the most serious question raised by the defendant.   In it are a series of questions, arising from the resignation of a commissioner, and the abolition of a commissioner's precinct, and the subsequent acts of an-

other commissioner sitting as a probate judge. The facts are these:

On the 5th day of August, 1903, Ole Linge was killed in an accident at the bottom of a shaft in the Treadwell mine, on Douglas Island, Alaska. At the time of Linge's death, and until the 25th day of August, 1903, Douglas Island comprised a commissioner's precinct, which under section 763, Code Civ. Proc. Alaska (31 Stat. 452), constituted the precinct of the probate court. The commissioner's court and the probate court were presided over by G. M. Irwin, the then duly qualified and acting commissioner and ex officio probate judge for the Douglas precinct. Within a few days after Linge's death, one Emery Valentine made an application to the Douglas Island probate court for letters of administration upon his estate. Valentine was appointed administrator, and letters were duly issued to him. Shortly thereafter G. M. Irwin resigned as commissioner and ex officio probate judge, and the Douglas Island commissioner's precinct was, by an order of the district judge dated August 25, 1903, abolished. The order was as follows:

"It appearing to the satisfaction of the court that the public interests demand, and that the convenience of the people require, that the commissioner's precinct heretofore known as Douglas Island commissioner's precinct, shall be discontinued, it is therefore ordered by the court that said precinct be and it is hereby discontinued, and that the territory within the boundaries of such precinct as heretofore designated shall become a part of the Juneau commissioner's precinct and recording district.

"It is further ordered that the resignation of George M. Irwin be and the same is hereby accepted, and that the said George M. Irwin be wholly relieved from the duties of the office of U. S. Commissioner on the 31st day of August, 1903.

"And it is further ordered that the said George M. Irwin deliver the records and property pertaining to his office to H. H. Folsom, U. S. Commissioner and ex officio recorder of the Juneau recording district.

"Dated August 25, 1903."

The record discloses no further action taken in the matter of the estate of Ole Linge, deceased, until February 24, 1905, when Z. R. Cheney and R. W. Jennings appeared in the probate court for the Juneau precinct and filed petitions on behalf of certain relatives of the deceased, in which they prayed for the removal of Emery Valentine, and for the appointment of some other person to be administrator. On this petition Valentine was cited to appear on March 4, 1905, and show cause why he should not be removed as such administrator and his letters revoked. The record shows that Valentine appeared on the return day and opposed the application for his removal. After hearing the evidence and arguments by counsel, the Juneau probate judge made and entered an order, which, after the preamble, reads as follows:

"It is considered and ordered that Emery Valentine be and he is hereby removed as such administrator, and that on Saturday, March 11, 1905, at the hour of 11 o'clock a. m., he file his accounting therein, and that in the meantime and from henceforth the said Emery Valentine shall take no steps to settle or compromise the action mentioned in the said petition, and that he take no further steps whatsoever in this estate than to file his said accounting.

"Provided, that said Emery Valentine may, if he so desire, on or before said date, voluntarily resign as such administrator.

"And the matter of the appointment of administrator de bonis non in lieu of the said Valentine is hereby continued until Saturday, the 11th day of March, 1905, at 11 o'clock."

It appears that Valentine did not take advantage of the permission to resign, and thereupon the probate judge made a second order removing him as such administrator. Neither in this nor in the former order, however, were his letters of administration revoked. In this latter order, which on its face is regular in all respects other than the above, Z. R. Cheney is appointed as administrator of the Linge estate. On the same day Cheney filed the bond required by the order

3 A.R.—2

and took the oath of office. Letters were issued to him on March 13, 1905. To all these orders of the probate court Valentine on the 14th of March, 1905, filed exceptions, and appealed therefrom, praying that a transcript be made and forwarded to the clerk of the district court. The transcript was filed in the office of the clerk of the district court on June 2, 1905.

Subsequent to the issuance of letters to Cheney and the filing of exceptions by Valentine, but prior to the sending up of the transcript, Cheney, as administrator, brought this action. Those are the pertinent facts. The contention urged by defendant is, in substance, that Cheney neither had nor has authority or capacity to bring or maintain the suit or to act as administrator of the estate of Ole Linge. It is based upon three propositions, which are in brief:

First. That the Juneau commissioner and ex officio probate judge never acquired jurisdiction of the proceedings or case, so as to give him the power or authority to enter the orders of which complaint is made, and therefore he could neither remove Valentine nor appoint Cheney; that Cheney's appointment was consequently void, and he could not maintain this action.

Second. That, even if the probate judge of the Juneau precinct had acquired jurisdiction, the appeal taken by Valentine, which is still pending, acted as a supersedeas, and therefore the appointment of Cheney was void.

Third. That the probate judge of the Juneau precinct has never revoked the letters of administration issued to Valentine, and therefore no vacancy occurred to warrant the appointment of Cheney.

And now let us see if the Juneau commissioner and ex officio probate judge acquired the jurisdiction of the Linge proceeding to enable him to remove Valentine as administrator and appoint Cheney in his stead. It may be appropriate to

look somewhat into the character and jurisdiction of probate. courts in Alaska. Under the Oregon Code, which was in force in Alaska for many years prior to the enactment by Congress of the present system of laws known as the Alaska Codes, territorial or district probate courts were of inferior and limited jurisdiction. Farley v. Parker, 6 Or. 105, 25 Am. Rep. 504.

The Alaska Codes have not changed their character, and the probate courts of Alaska are still courts of limited and inferior jurisdiction. Section 6, Pol. Code, and section 943, Code Civ. Proc. (31 Stat. pp. 323, 480); 8 Am. & Eng. Ency. of Law (2d Ed.) 38; Sylvester's Adm'rs v. Willson's Adm'rs, 2 Alaska, 325. These courts are creatures of statute, and hence we must look to the statute to ascertain the jurisdiction. Congress, by section 6 cited above, has provided that the commissioner shall have "the jurisdiction conferred by law in any part" of the district of Alaska.

This section also directs that:

"The commissioners shall be ex officio * * * probate judges and shall perform all the duties and exercise all the powers, civil and criminal, imposed or conferred on the United States commissioners by the general laws of the United States and the special laws applicable to the district."

Since we are concerned only with commissioners as ex officio probate judges, what is "the jurisdiction conferred by law," and what are "the duties * * * and the powers * * * imposed or conferred by the general laws of the United States and the special laws applicable to the district" upon them as such?

It seems unquestionably the fact that the general laws of the United States give no jurisdiction, impose no duties, and confer no powers upon commissioners as ex officio probate judges. By the process of exclusion, then, we find that we have only the special laws applicable to Alaska to search for

the desired information. In section 763 of the Code of Civil Procedure these special laws declare that:

"Commissioners appointed in pursuance of this act and other laws of the United States have jurisdiction within their respective precincts subject to the supervision of the district judge in all testamentary and probate matters"

—to perform certain acts and duties. It is to be noted that the jurisdiction of commissioners as ex officio justices of the peace and as ex officio probate judges differs. As the former, they may act anywhere in the district. Section 6, cited above. As the latter, they merely "have jurisdiction within their respective precincts." Therein the probate judges may:

"First, take proof of wills; second, grant and revoke letters of administration; * * * third, direct and control the conduct and settle the accounts of * * * administrators"

—and perform other acts, enumerated in the section, which are not germane to the question under consideration. It now seems proper to inquire as to what commissioner shall grant administration on intestate's estate. The answer is found in two sections of the Alaska Code of Civil Procedure. The first (section 774) declares that:

"Administration of the estate of an intestate shall be granted by the commissioner authorized to take proof of a will as prescribed in section 772."

And the second (section 772) that:

"Proof of a will shall be taken by the commissioner as follows:
"First, when the testator at or immediately before his death was an inhabitant of the precinct, in whatever place he may have died."

The two sections thus lay down a statutory rule, to the effect that administration must be granted in the precinct of which the decedent was an inhabitant at or immediately before his death, irrespective of the place where he died. This rule seems arbitrary, and not liable to be changed or varied in

any case by considerations of convenience or expediency. For any exceptions to it, recourse must be had to the statute, and not elsewhere. The reason for the establishment of this rule is to prevent more than one administration upon any estate within the district. In re Harlan's Estate, 24 Cal. 182, 85 Am. Dec. 58.

Briefly, then, the special laws of the United States applicable to Alaska provide (a) that a commissioner, acting as ex officio probate judge, shall have, within his respective precinct, jurisdiction (b) to grant administration on the estate of an intestate (c) when the intestate at the time of his death or immediately prior thereto was an inhabitant of that commissioner's precinct. Ole Linge, the intestate herein, died in, and at the time of his death was an inhabitant of, the Douglas Island commissioner's precinct. At that time G. M. Irwin was the duly qualified and acting commissioner of the precinct. Under the provisions of the Alaska Code, above, he, and he alone, was vested with jurisdiction to grant the administration. Plaintiff argues that under the court order of July 24, 1900 (Journal A, p. 18), by which the various recording districts and commissioner's precincts were established, a commissioner from an adjoining precinct might have taken jurisdiction of the case. That part of the order to which counsel referred is as follows:

"That when either of said commissioners are absent from their precincts, or for any other reason are disqualified to serve in the trial of any matters brought before them, a commissioner from an adjoining precinct may take jurisdiction of such action or offense and may try such action or offense in such adjoining precinct in the place of such absent or disqualified commissioner."

In view of the section quoted above the court is unable to agree with counsel. The commissioner from an adjoining precinct undoubtedly might have gone into the Douglas precinct and conducted ordinary civil or criminal matters as an

ex officio justice of the peace; but as ex officio probate judge he had no jurisdiction outside of his own precinct, and no order of the district court could have given it to him. And even granting that the order quoted had given him jurisdiction to act in the absence or disqualification of the Douglas Island probate judge, he did not and could not have taken jurisdiction, since the Douglas Island probate judge was neither absent nor disqualified, but had properly assumed the jurisdiction of the Linge administration.

But counsel urges, Irwin having resigned as commissioner, the Douglas Island precinct having been abolished, the records and property of the Douglas Island precinct having been delivered to the Juneau commissioner, and the jurisdiction of the territory of the old precinct having been vested in him by another order of the court, the power under the order of July 24, 1900, was revived, and he took jurisdiction of the Linge case by virtue of the two. Such a construction is not reasonable. Irwin was neither absent nor disqualified. On the contrary, he was no longer a commissioner, and the precinct and court on Douglas Island had ceased to exist—were defunct. The plain purpose of the order of July 24, 1900, was to provide for an administration of the civil and criminal law in a precinct when the commissioner as ex officio justice of the peace of any given precinct was, for any reason, unable to perform the duties of that office. It was not made to meet any such contingency as has arisen here.

When Irwin resigned, and the Douglas Island court and precinct became defunct, on August 31, 1903, there were certain cases or proceedings pending and in process of administration. The Linge estate proceeding was one of these. One of counsel for plaintiff questions the propriety of applying the term "case" to a proceeding in a probate court. Whether it should be designated as a "case" or as a "proceeding" appears to the court to be a mere quibble over terms, which is without

the least force or importance. Whatever the term may be by which it is denominated, the fact remains that, before a court can act in a particular matter, it must have acquired jurisdiction, and an argument over the name to be applied to that matter does not aid in arriving at the principal question involved in the case at bar.

If, then, the order of July 24, 1900, cannot be deemed to have given the Juneau commissioner jurisdiction, from what source did he obtain it, if at all? There are generally three ways in which jurisdiction of a case or proceeding may be obtained by a court: (a) By the filing of proper and appropriate pleadings in the court. This is the ordinary way. (b) By an order of the court in which a case has been initiated, as above, transferring the case to another court. (c) By virtue of enactment of the lawmaking power. Did the Juneau probate judge acquire jurisdiction of the proceeding in the ordinary way? He certainly did not. The proceeding had been initiated in the Douglas Island court. The steps taken before the Juneau probate judge were for the removal of the acting administrator, and not for the initiation of administration. There was no order of the Douglas Island probate judge transferring the proceedings to Juneau. Therefore, if the probate judge of the Juneau precinct acquired jurisdiction at all, it must have been by virtue of authority given by the lawmaking power. An examination of the special act of Congress applicable to Alaska for grants of jurisdiction has already been made. Nothing therein can be found to warrant the probate judge in assuming jurisdiction of pending cases.

There is another source of quasi legislative enactment to be found in Alaska. As a result of the supposed isolation of the district of Alaska, and its great distance from the seat of the federal government, a peculiar form of government for the district has grown up, by which many and diverse functions have been given by Congress to the judges of the district court.

Not the least of these is the power to make certain provisions for the district by means of court orders. Sections 6 and 13, cited above, and sections 1 and 2, Civ. Code Alaska (31 Stat. p. 494). Congress has empowered the district judges not only to appoint and remove commissioners who shall be ex officio recorders and probate judges, but has also directed them to define, change, or abolish recorder's districts and commissioner's precincts, as the public welfare might demand. By virtue of this power, the judge of this court, on July 24, 1900, made and entered an order in which, among other things, he defined the boundaries of the Douglas Island and the Juneau commissioner's precincts. On August 25, 1903, he made another order, becoming effective on August 31, 1903, by which he accepted the resignation of the Douglas Island commissioner, abolished the Douglas Island commissioner's precinct, transferred jurisdiction of the territory of that precinct to the Juneau commissioner, and directed Irwin, the retiring commissioner, to "deliver the records and property of his office to H. H. Folsom, U. S. Commissioner and ex officio recorder of the Juneau recording district." This, then, is the quasi statute by virtue of which it is sought to sustain the acts of Commissioner Folsom in taking jurisdiction of the Linge matter. Plaintiff asserts that this order is sufficient to transfer jurisdiction of the cases, and directs the attention of the court to the case of Bird v. U. S., 187 U. S. 118, 23 Sup. Ct. 42, 47 L. Ed. 100, where the Supreme Court states the presumption "against a construction which would render a statute ineffective or insufficient, or which would cause grave public injury or inconvenience."

The court is cognizant of this rule of statutory construction, and appreciates the unfortunate result of a construction which will not uphold the jurisdiction assumed by commissioner Folsom. At the same time, no court would be warranted in reading into the law something that patently is not there. The court must construe the law as it is found, maintaining its

sufficiency, if it may, but without hesitation declaring it to be ineffective, if it must.

Nowhere in this order of August 25, 1903, does there appear a direction for the transfer of pending cases. True, it directs the "delivery of the records and property" of the Douglas Island office to Commissioner Folsom. But the delivery of records does not vest jurisdiction of pending cases. Hunt v. Palao, 4 How. 589, 11 L. Ed. 1115; In re Harlan's Estate, 24 Cal. 182, 85 Am. Dec. 58. Neither does the transfer of the territory to the Juneau commissioner, either of itself or when taken with the direction "to deliver the records and property," carry pending cases. Any proceeding or case initiated after August 31, 1903, or any cause of action arising prior thereto within the old precinct of Douglas Island, but upon which no action or proceeding had been commenced prior to the abolition of the precinct, is properly within the jurisdiction of Commissioner Folsom, as laid down by that order. But the cases which had been initiated before Irwin, and were undisposed of and pending on August 31, 1903, when the precinct was abolished, do not seem to be within the purview of that order. If this order, or the laws of Alaska, do not vest Commissioner Folsom with jurisdiction of the Linge case, how then may he have acquired it?

Defendant asserts that inferior courts have no jurisdiction except that conferred by acts of the lawmaking power, and, since there is no such authority here, the Juneau probate judge had no jurisdiction in the case. Hunt v. Palao, 4 How. 589, 11 L. Ed. 1115; Ames v. Ry. Co., Fed. Cas. No. 324, and cases there cited; Koenigsberger v. Richmond Silver Min. Co., 158 U. S. 48, 15 Sup. Ct. 751, 39 L. Ed. 889; Dorne v. Richmond Silver Min. Co. (C. C.) 43 Fed. 691; Pendleton v. Cowling, 11 Mont. 38, 27 Pac. 388. But plaintiff replies that these are all cases in which a change of sovereignty is involved, where a state has taken the place of a territory, and

the questions have arisen in transferring cases from territorial to state courts, and that in the case at bar no such question is involved; that the sovereign power remains the same, and therefore no necessity existed for a specific legislative enactment transferring pending cases.

He also asserts that a question similar to that involved here was raised in the case of Bird v. U. S., cited above, and that the Supreme Court decided adversely to defendant's contention.. The question in that case was somewhat analogous, but the decision turned on certain saving clauses in the Alaska Code. That case, therefore, does not seem to sustain plaintiff's contention.

The cases cited by defendant do involve the question of sovereignty, as urged. Notwithstanding ·at, there is to be found underlying each decision the principle that one court cannot assume jurisdiction of cases pending in another court, when that other court has become defunct, from whatever cause, without that jurisdiction be conferred by act of the law-making power.

Nor is this principle confined to cases where the transfer is sought from a territorial to a state court. The same rule exists where the jurisdiction of courts of counties in the same state are involved. The Matter of the Estate of Harlan, 24 Cal. 182, 85 Am. Dec. 58, is a case in point. In this case the court says:

"In organizing the new county of Alameda, no provision was made for transferring to the new county the jurisdiction to administer the estates of those who had already died in the county of Santa Clara. Provision is made for transferring certain records and legal proceedings of a local character from the county of Santa Clara to the county of Alameda. * * * The residence of the party at the time of his death, and not the situation of his estate, is the test of jurisdiction. The provisions of the act cited clearly do not embrace cases like the one under consideration. Had the Legislature intended to include such cases, they doubtless would have made provisions for them."

Nor do the provisions of any statute applicable to Alaska, or those provisions of the order of August 25, 1903, embrace cases like that at bar. The court is therefore of the opinion that the cases pending in the Douglas Island probate court at the time of its abolition are suspended, and must so remain until revived by an order of this court transferring jurisdiction thereof to the Juneau or some other probate judge. In no section of the law applicable to Alaska is the court able to find warrant for the attempt of Commissioner Folsom to assume jurisdiction, and the order of August 25, 1903, which should have transferred the cases, is absolutely silent upon the subject. In the opinion of the court it is hopelessly insufficient to give Commissioner Folsom jurisdiction to act in the matter. His orders removing Valentine and appointing Cheney are therefore void, and Cheney has no capacity to bring or maintain this action.

An extended consideration of the two remaining propositions of defendant seems unnecessary. However, that all questions involved in these motions may be fully submitted to the appellate court, the court deems it advisable to briefly state its conclusions upon all matters presented. Thus, in the event that the case be remanded for any reason, all points heretofore raised will have been settled, and a speedy and conclusive trial of the issues may then be had.

The next proposition submitted in support of the motion is that Valentine's appeal from the orders of the probate court acted as a supersedeas, and hence Cheney had no power to maintain this action. This position is not well taken. The court is of the opinion that the appeal from orders of Alaska probate courts does not act as a supersedeas. Chapter 90, tit. 2, c. 786, Acts 1900 (31 Stat. 479); 2 Woerner, 1206; Knight v. Hornaker, 33 Or. 154, 54 Pac. 277, 659; 20 Am. & Eng. Ency. (2d Ed.) 1215–1237, and following.

The court is also of the opinion, in view of the peculiar

phraseology of the sections of the Alaska Code (section 763, subd. 2, and sections 783, 784, tit. 2, c. 786, Acts 1900 [31 Stat. 456]), that to create a vacancy in the office of an administrator the order of removal must also in terms revoke the letters of administration. 1 Woerner, 569; 11 Am. & Eng. Ency. (2d Ed.) 815, 816; 19 Ency. of P. & P. 842; Sylvester's Adm'rs v. Willson's Adm'rs, 2 Alaska, 325; McDowell v. Jones, 58 Ala. 25; Godwin v. Hooper, 45 Ala. 613; Munroe v. People, 102 Ill. 408. Neither the first nor the second order of the Juneau probate judge revoked the letters. Each order merely stated that Valentine "is removed as such administrator." This was not sufficient under the Code to create a vacancy. Therefore Cheney's appointment was void, and he had no capacity to institute this action.

None of the grounds advanced by defendant is, however, a sufficient or proper basis for a new trial, though as propositions of law the court believes two, as herein discussed, to be sound. A new trial would be a futile and useless proceeding, for it would bring the parties no nearer to a conclusion of the litigation than they now are. The appropriate disposition seems to be the denial of the motion for a new trial, the granting of the motion in arrest of judgment, and the dismissal of the action. In this way the questions involved may be speedily submitted to the appellate court and a determination had.

Let an order be entered in conformity herewith.