SYLVESTER'S ADM'R v. WILLSON'S ADM'RS.

(First Division.   Juneau.  1905.)

No. 258a.

1. COURTS—OF ORIGINAL AND GENERAL JURISDICTION.

A court of original and general jurisdiction is one which is competent by its constitution to decide upon its own jurisdiction, and to exercise it to a final judgment, without setting forth in its proceedings the jurisdictional facts and evidence upon which it is rendered.  Its records import absolute verity, and the presumption of regularity attaches thereto.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 375, 140.]

2. SAME—INFERIOR JURISDICTION—ALASKA PROBATE COURT.

Courts of limited jurisdiction must set forth in their orders and judgments the facts and evidence necessary to establish their authority to act.  No presumption of regularity follows their judgments and decrees, and they may be attacked in a collateral proceeding.  Held, that the probate court in Alaska is an inferior court, and that no presumption of regularity supports its decrees and orders.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 142, 144.]

3. SAME.

A party offering or relying upon a judgment of the probate court in Alaska must establish, not only the fact that the order was made, but also those steps leading up to the granting of the order, which show that the probate court had not only jurisdiction of the subject-matter, but that it acquired the jurisdiction of the person by the proper acts, through the medium of its process and its officers.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 142, 144.]

4. EXECUTORS AND ADMINISTRATORS—REMOVAL.

Where an executor or administrator becomes a nonresident of Alaska, he may be removed upon application of any person interested in the estate. *Held*, that the probate judge had no authority to initiate proceedings, and remove such executor or administrator. *Held*, that the order of removal must show a compliance with the statutory requirements.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 243, 225, 199.]

5. RECEIVERS—ESTATES OF DECEDENTS.

The power to appoint a receiver is discretionary, and not an absolute requirement, and it is a well-established rule that the courts will not appoint a receiver when there exists another plain, speedy, and adequate remedy at law. *Held* that, where the probate court had ample power to care for an estate by compelling the administrator to account, a receiver for the same would not be appointed.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receivers, §§ 12, 14; vol. 22, Cent. Dig. Executors and Administrators, § 125.]

Bill in equity by L. H. Wakefield, as administrator de bonis non of the estate of Rufus Sylvester, deceased, against Mary A. Willson and T. C. McHugh, administrators of the estate of Thomas A. Willson, deceased, for an accounting by defendants and the appointment of a receiver of the property of Rufus Sylvester, plaintiff's intestate.

The facts are these: Prior to March 2, 1900, Thomas A. Willson and Rufus Sylvester were residents of the town of Wrangell, Alaska, and engaged in the business of conduct-

ing a sawmill at that place under the firm name and style of Willson & Sylvester. Rufus Sylvester was also a partner with Robert Reid in a general merchandise business. Reid conducted the store and Willson managed the mill. On that day Rufus Sylvester died testate, survived by a wife and five children. By the will Samuel Sylvester, deceased's brother, Warren Rufus Smith, his nephew, and Robert Reid, his partner, were named as executors, to serve without bond.

This will was recorded in the probate court at Wrangell, Alaska, on March 12, 1900, and on the 3d day of April, 1900, letters testamentary were issued to Robert Reid and Samuel Sylvester, and they duly qualified as executors by taking the oath prescribed by law. The will, so far as it related to the disposition of decedent's property, was as follows:

"After my debts, if any, are paid, I wish my executors to dispose of my property as to them seems best, and place the proceeds at interest in different banks, or other securities of undoubted safety."

Then follows the direction as to the support, etc., of the family and the bequests. On the same day that the letters were issued, the probate judge appointed three appraisers of the estate. On April 23, 1900, the executors filed in the probate court the original appraisal or inventory of all the property owned by deceased at the time of his death, and of all the property in which he was interested at the time. The recapitulation is as follows:

Individual estate of Rufus Sylvester appraised at...... $  1,125 00
Partnership estate of Reid & Sylvester appraised at.....     32,045 23
Partnership estate of Willson & Sylvester appraised at..     54,040 31

    Total appraised value ........................ $ 87,210 54

On April 16, 1901, Robert Reid and Samuel Sylvester filed their first account, entitled "First Semiannual Account," but which is in reality the annual account. This account shows receipts from the Willson & Sylvester partnership estate.

The only evidence in this case of the removal of Samuel Sylvester as one of the executors of the will of Rufus Sylvester, deceased, is plaintiff's Exhibit FF, an order made by the probate judge, dated March 11, 1903, which is as follows:

"United States of America, District of Alaska.

"Wrangell Precinct. In Probate.

· "Before W. G. Thomas, Judge.

"In the Matter of the Estate of Rufus Sylvester, Deceased.

"Order Discharging Samuel Sylvester, One of the Executors.

"Whereas, Samuel Sylvester and Robert Reid, being named in ———— as executors of the last will and testament of Rufus Sylvester, deceased, and qualified as such on the 3d day of April, 1900, at the ————, both being residents of the town of Wrangell, District of Alaska; and whereas, in the month of October, 1901, Samuel Sylvester, one of the said executors, disqualified himself as such by leaving the District of Alaska, and since the above-stated time has been and is now a nonresident of Wrangell precinct, District of Alaska:

"It is therefore, after citation duly issued, considered, ordered, and decreed that the said Samuel Sylvester, one of the above-named executors, be, and is hereby, discharged as such.

"W. G. Thomas,

"U. S. Commissioner and Probate Judge.

"Dated at Wrangell, Alaska, this 11th day of March, A. D. 1903."

Some six months after the entry of this order, and on September 9, 1903, a petition for the removal of Robert Reid, the other executor of the last will and testament of Rufus Sylvester, deceased, was filed with the probate judge, a citation issued, served on the said Reid, and return duly made. On the 18th day of September, 1903, the probate judge made an order removing the said Reid as such executor, and revoking his letters, and purporting to appoint one L. H. Wakefield special administrator of said estate, fixing the amount of his bond at the sum of $10,000.

On the same or the following day, on petition of May Sylvester, the daughter and one of the legatees of Rufus Sylvester, deceased, another order was made by the probate judge, purporting to appoint L. H. Wakefield administrator de bonis

non with will annexed; the order reciting that the value of the estate was probably $30,000 but therein no amount was fixed for his bond. On that day Wakefield took the oath of office, and filed a bond in the sum of $10,000, which was approved by the probate judge. Thereafter one of the sureties on said bond withdrew, and a new bond in the same amount was filed. Under this new bond, Wakefield, the plaintiff in this suit, continued to act.

So much for the facts as to the Sylvester executors. After the death of Rufus Sylvester, Thomas A. Willson, decedent's partner in the mill business, continued to operate the mill as theretofore; the executors, Reid and Sylvester, having directed him to continue, agreeing with him that he should have the same compensation for managing the business as before Sylvester's death. No bonds were given by Willson as surviving partner, nor did the executors seek to take possession under the provisions of the Code. The business proceeded as though nothing had transpired to change the status thereof until the death of the surviving partner, Thomas A. Willson, on the 23d day of February, 1903. Willson died intestate.

Thereafter, and on the 4th day of March, 1903, Mary Arthur Willson, the widow and sole heir of Thomas A. Willson, filed a petition in the probate court at Wrangell, Alaska, praying that letters of special administration be issued to her, together with some qualified and competent person to take charge of the estate of Thomas A. Willson, deceased, pending proceedings for the appointment of a general administrator thereof. Said petition alleged that the decedent left real and personal property of the value of about $45,000, consisting, among other things, of an undivided half interest in the partnership property of Willson & Sylvester at Wrangell. Thereupon letters of special administration of that estate were issued to Mary Arthur Willson and T. C. McHugh upon their qualifying in a bond in the penal sum of $90,000.

On March 30, 1903, Mrs. Willson filed another petition, in-which she prayed that a hearing be had, and that thereupon letters of administration of the partnership estate of Willson & Sylvester be issued to her and such other competent person as the court might nominate. Appraisers of the partnership estate of Willson & Sylvester were duly appointed, a hearing was duly ordered, and notice and citations thereon duly issued and served. The hearing was held on May 2, 1903, the appraisal showing partnership property to the value of $84,-300.37 was filed, and the probate judge appointed Mary Arthur Willson and T. C. McHugh administrators of the partnership estate of Willson & Sylvester. Letters of administration of said partnership estate were directed to be issued to them, upon their taking the oath of office and filing the bond in the sum of $90,000. The bond was given on May 25, 1903, and the administrators took the oath on that day. Thereupon letters of administration were issued to them. Since that time, so far as the evidence discloses, they have held, and now hold, the two offices, to wit, special administrators of the estate of Thomas A. Willson, deceased, and administrators of the estate of Willson & Sylvester.

As administrators of the partnership estate, they filed on October 26, 1903, the first semiannual account of their administration. This account runs from March 6, 1903, the date on which they were appointed special administrators of the estate of Thomas A. Willson, deceased, and not from the day on which they qualified as administrators of the partnership estate. The account makes no mention of this change of authority. These defendants were in possession of the partnership estate of Willson & Sylvester as the duly appointed and qualified administrators thereof, and were operating the mill under and by virtue of a certain order made by the probate judge on the 15th day of July, 1903, wherein they were authorized to continue the operation of the said mill until the further

order of the court, when the order purporting to appoint Mr. Wakefield administrator de bonis non of the estate of Rufus Sylvester, deceased, was made. Immediately Wakefield had qualified under that order, he demanded of the defendants that they forthwith turn over to him the possession of the partnership estate of Willson & Sylvester. They refused to comply with this demand, and this action was begun on the 1st day of October, 1903. On the application of this plaintiff, the temporary receiver of all the property in which Rufus Sylvester's estate held an interest was appointed by this court, and forthwith qualified and took possession of all such property, including the partnership property of Willson & Sylvester. The original receiver resigned on January 30, 1905, and a new one was appointed to serve pending the determination of the suit. Plaintiff prays that this receivership be made permanent; that defendants be required to account to him for the profits realized from their operation of said partnership business and for the profits of the business while conducted by Thomas A. Willson during his lifetime and after the death of Rufus Sylvester, and that the affairs growing out of the said partnership be fully wound up and adjusted by the court. Defendants resist the suit, and pray that the receiver be ordered to settle his account forthwith and be discharged, and that this bill be discharged.

Crews & Hills and Melville C. Brown, for plaintiffs.
John J. Boyce and R. W. Jennings, for defendants.

GUNNISON, District Judge. This case presents a most complicated condition of the affairs of men, dead and alive. Had the decedents, their executors and administrators, set about the task, they could not have been more successful in producing the tangle which is disclosed by the evidence in this case. From these complications, many legal questions arise

under the laws of Alaska which it would seem have not been passed upon by the courts of this district.

. The first question raised on the pleadings is as to the validity of the appointment of L. H. Wakefield as administrator de bonis non with the will of Rufus Sylvester, deceased, annexed. Plaintiff offered in evidence the order of the probate court purporting to remove Samuel Sylvester as executor, that removing Robert Reid, and that appointing Mr. Wakefield, and rested upon that; contending that these orders were presumptive of regularity, and that they could not be attacked in a proceeding collateral to the one in which the orders were granted. The defendants resisted this contention on the part of the plaintiff, and asserted that the probate court in the District of Alaska is a court of limited jurisdiction and inferior; that, therefore, no presumption of regularity attaches to its orders, and that its orders, judgments, and decrees may be assailed collaterally.

There is in the law no sharply defined line which divides a superior from an inferior court, nor one which defines with exactness the distinction between courts of original and general jurisdiction and those of special and limited jurisdiction. The distinction between these classes of courts must be found largely in the laws which established them. A court of original and general jurisdiction is said to be one which is competent by its constitution to decide upon its own jurisdiction, and to exercise it to a final judgment, without setting forth in its proceedings the jurisdictional facts and evidence upon which it is rendered. Its records import absolute verity, and the presumption of regularity attaches thereto; but the courts of limited jurisdiction must set forth in their orders and judgments the facts and evidence necessary to establish their authority to act. 8 Am. & Eng. Ency. of Law (2d Ed.) 38. No presumption of regularity follows their judgments and decrees, and they may be attacked in a collateral proceeding. The

test of inferiority is that the court is either, first, placed under the supervisory or appellate control of other courts, or, second, the jurisdiction as to subject-matter is limited or confined. Bailey v. Winn, 113 Mo. 159, 20 S. W. 21; State v. Daniels, 66 Mo. 201. Inferior courts can be given no power by implication, and have only such as may enable them to exercise the power granted them by statute. In order to determine definitely in which class the court may be, it becomes necessary to examine those statutes from which the court derives its authority. Section 6, c. 1, tit. 1, p. 3, of the Alaska Codes provides:

"That the respective judges of the [district] court shall appoint and at pleasure remove * * * commissioners in and for the district, who shall have the jurisdiction conferred by law * * *."

By the same section it is provided that the commissioners shall be probate judges, "and shall perform all the duties and exercise all the powers * * * imposed or conferred on the United States commissioners by the general laws of the United States and the special laws applicable to the district." United States commissioners are given no power as probate judges under the general laws of the United States, and therefore we must look to the special laws applicable to the district for their powers. These we find enumerated in part 4, tit. 2, c. 79, § 763, Carter's Ann. Codes, as follows:

"The commissioners appointed in pursuance with this act and other laws of the United States have jurisdiction within their respective precincts, subject to the supervision of the district judge, in all testamentary and probate matters, that is, * * * ; second, to grant and revoke letters testamentary, of administration and of guardianship."

Part 4, tit. 2, c. 90, provides for appeals to the district court from all orders of the commissioners exercising the jurisdiction of a court of probate, and provides further, in section 941, that certain persons may file exceptions to any order of any commissioner acting as probate judge, which grants or revokes

letters of administration, etc., and directs the judge (section 942), upon the filing of such exception, to proceed, on due notice, to hear and determine the same. Section 943 further directs the district court or the judge thereof to determine—

"The issues so raised, according to the very right of the matter, and make such order in the premises as he may see fit, which order shall be entered in a docket to be kept by the clerk of the court for that purpose. * * * Such order shall be deemed a judgment subject to appeal in the manner provided for appeals from judgment in the district court."

It is patent from examination of these provisions of the Code that the probate court of the District of Alaska is an inferior court, and possesses only limited jurisdiction. This being the fact, its orders, judgments, and decrees carry with them no presumption of regularity, since that presumption arises only upon the superior courts and those having a general jurisdiction; and so the party offering or relying upon a judgment of a probate court must establish, not only the fact that the order was made, but also those steps leading up to the granting of the order, which show that the probate court had not only jurisdiction of the subject-matter, but that it acquired the jurisdiction of the person by the proper acts, through the medium of its process and its officers. By the provisions of section 784 of chapter 81 of the same title and part of the Codes it is provided that:

"If an executor or an administrator becomes a nonresident of the district, he may be removed and his letters revoked in the manner prescribed in the last section, except that the notice may be given by publication or posting, for such time as the court or judge thereof may direct."

The "last section" is 783, and is as follows:

"Any heir, legatee, devisee, creditor or other person interested in the estate may apply for the removal of an executor or administrator * * *. Such application shall be by petition and upon notice to the executor or administrator; and, if the court finds the charge to be true, it shall make an order removing such executor or administrator and revoke his letters."

From these two sections it will be seen that where an executor or an administrator becomes a nonresident of the district, he may be removed, and his letters revoked by the court in a certain manner, and in that manner only. The probate judge, himself, has no power to initiate the proceeding, for his power is statutory, and he possesses none other than those which the statute gives him; hence, the proceeding for the removal of a nonresident administrator or executor must be upon the petition of one of those parties specified in section 783, and before the court can exercise the jurisdiction which the Code gives him it must have a case legally before it. Every power exercised by it must be found in and derived from the law, and must be exercised in the mode and manner prescribed by law; and if the court cannot try the question except under particular conditions, and when approached in a particular way, the law withholds jurisdiction until such conditions exist or the court is approached in the manner provided, and even consent will not avail to change the law in this regard. Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. How, then, must this be approached? The statute clearly defines the steps, which are: First, the petition of an heir, legatee, devisee, creditor, or other person interested in the estate; second, upon notice to the executor; third, after a hearing upon the charges and finding them to be true; fourth, an order removing the executor or administrator, and revoking his letters.

The plaintiff in this case introduced an order which purported to remove Samuel Sylvester as executor, and rested upon that, relying upon the presumption of regularity. The order itself fails to recite jurisdictional facts. There is no evidence before the court that the proceeding was properly initiated by petition, or that the court obtained jurisdiction of the person of the executor, who was alleged to have been a nonresident, by the proper service of citation upon him, either

in person or by publication or posting. Nor does it recite that Samuel Sylvester appeared. Further than that, the order does not even recite that Samuel Sylvester is a nonresident of the District of Alaska, but alleges only in the recital preceding the order that at a certain time he removed from the district, and since that time has been a nonresident of the precinct in which the commissioner exercises his jurisdiction. From anything that appears in the evidence in this case, Samuel Sylvester, the executor whom the probate court attempted to remove, might at the time of the hearing have been a resident of the District of Alaska, and still qualified to act as the executor; for the law does not expect nor require an executor to remain a resident of a particular precinct of the district. If he shall be a resident of the district, that is sufficient; and certainly the probate court cannot, without notifying him either personally or constructively of this hearing, deprive him of the right which he theretofore had and to which he is entitled. The court in failing to give notice has deprived itself of the right to exercise the power which the statute gives it. Even had the proceeding been properly initiated, the court might not sit in judgment upon Sylvester, since it had not obtained jurisdiction of his person in the mode prescribed by law.

But, even had the preceding steps been taken which were necessary to give it the right to exercise the power, the court failed to exercise it, for the order itself purports only to "discharge" the executor. It is a well-established principle of law that, until the letters of an executor are revoked, there is no vacancy. An order discharging or revoking an executor does not revoke the letters. The Code, by express language, in section 783, requires that, "If the court finds the charge to be true, it shall make an order (1st) removing such executor or administrator, and (2nd) revoke his letters." The order of the probate court in this instance does not conform to the statute, and is not sufficient to devest Sylvester of authority or

to cause a vacancy. It matters not how the probate judge may consider the coexecutor; the real question is, was Samuel Sylvester properly removed from office, so that when Robert Reid, the other executor, was removed, a vacancy occurred?

I am of the opinion that the probate court is a court of inferior and limited jurisdiction, and, as such, its orders, judgments, and decrees are subject to the supervision of the district court, and may be attacked collaterally therein; that the plaintiff must establish the jurisdictional facts and the steps in the proceeding which give validity to the order of the probate court. There is no evidence before the probate court either that the proceeding for the removal of Sylvester was properly initiated, that the court obtained jurisdiction of the person of Samuel Sylvester, as provided by law, or that the order purporting to remove him accomplished what is contended for it; and, therefore, even after the removal of Robert Reid as executor, no vacancy existed which would warrant the probate court in appointing an administrator de bonis non with will annexed. The order appointing Mr. Wakefield was void, since where the removal of an executor and the revocation of his letters are void, a second grant is void. McDowell v. Jones, 58 Ala. 25; Godwin v. Hooper, 45 Ala. 613; Munroe v. People, 102 Ill. 408; Flinn v. Chase, 4 Denio (N. Y.) 85. There cannot be, at the same time and in the same jurisdiction, two valid administrations upon the same estate. 19 Ency. P. & P. 842. Therefore, since the appointment of Mr. Wakefield as administrator de bonis non was void, he is without authority to commence this action, and it must be dismissed.

But suppose that the appointment of Mr. Wakefield had been valid, could he have succeeded in this action? Mr. Wakefield, upon his appointment as administrator de bonis non, qualified in a bond of $10,000, and immediately thereafter demanded of Mrs. Willson and Mr. McHugh, the defendants in this action, the custody and control of the mill property, theretofore

2 A.R.—22

owned by the firm of Willson & Sylvester. This was refused by the defendants, and the plaintiff forthwith instituted this suit, alleging, first, the refusal to turn over the property; second, failure on the part of the defendants to account; and, third, the misappropriation of funds coming into their hands, mismanagement of the property, and general maladministration on their part.

The first inquiry to be made is as to whether or not the defendants acted improperly in refusing to comply with the demand of the plaintiff, and deliver to him the custody and control of this partnership property. In determining this question, it will be necessary to investigate the manner in which the defendants came into possession of the property and the authority for their custody thereof. As appears heretofore, Thomas A. Willson died on the 23d day of February, 1903. Prior to that time, and after the death of his partner in March, 1901, Willson had continued to operate the mill business as if nothing had transpired to change the condition. No bond had been given by him as surviving partner, and none had been demanded by the executors of the Sylvester estate, nor had these executors demanded the possession of the property. Whether he had a right to continue to operate this business without giving a bond is not a question to be determined in this litigation.

A few days after Mr. Willson's death, Mrs. Willson, his widow and sole heir, filed in the probate court at Wrangell a petition praying for letters of special administration upon his estate, alleging therein that the approximate value of his estate was $45,000. Special letters of administration upon the estate of Thomas A. Willson, deceased, were thereupon issued to Mrs. Willson and to Thomas C. McHugh, upon their giving a bond in the penal sum of $90,000.

Immediately these special administrators had qualified, they took possession of the personal estate of Thomas A. Willson and the property of the partnership of Willson & Sylvester.

But within 30 days thereafter Mrs. Wilson filed another petition with the probate court, in which she prayed that letters of special administration upon the partnership estate of Willson & Sylvester be issued to her, that appraisers be appointed, and that a hearing be had upon the petition. Appraisers were duly appointed; the appraisal filed showing the value of the partnership property to be $84,300.37. Notice was duly given to all parties in interest of the hearing, and upon the hearing Mrs. Willson and T. C. McHugh were appointed as administrators of the partnership estate of Willson & Sylvester. Letters were issued to them upon their giving a bond in the penal sum of $90,000. This bond, while not double the value of the partnership property, as required by section 793, c. 81, of the Alaska Code of Civil Procedure, was adequate to cover the value of the property. They immediately took possession of the property as administrators of the partnership estate, and under a verbal order or direction of the probate court, proceeded to the operation of the mill. This verbal order was on the 15th day of July, 1903, reduced to writing and made of record in the probate court.

At the time, then, that the plaintiff in this suit demanded the custody and control of the partnership property, these defendants had the custody and control of and were operating the same under the orders of the probate court under a bond in the sum of $90,000. While this bond was not double the value of the partnership property, it was a bond given by them as administrators of that property, and was far larger than the bond under which Mr. Wakefield was acting. Furthermore, the bond of Mr. Wakefield was not given for the purpose of qualifying him as administrator of the partnership property, but merely as administrator de bonis non in the Sylvester estate. If the bond of the defendants was inadequate, how much more so was that of Mr. Wakefield. The court is at a loss to understand how he could hope or expect that the de-

fendants, acting under the authority of their appointment as administrators of the partnership estate, and under heavy bond, should turn the possession of this property over to him, when he had no authority in law to demand it, and had given no adequate security. His appointment as administrator de bonis non in no way gave him a right to demand the possession of the property, and, even had he tendered a bond in twice the appraised value of the partnership estate (which he did not do), it is doubtful whether he would have been entitled to what he demanded; certainly not without showing a waste of the property or improper administration by them.

Conceding, for the sake of the argument, that plaintiff was duly and properly appointed administrator de bonis non, we now arrive at the question as to whether or not the plaintiff has established the necessity, or even the expediency, of the continuance of this receivership. He certainly has shown neither waste by defendants in their administration of the property nor improper conduct on their part. One of the charges was that the defendants had failed to file a semiannual report of their doings as administrators, as required by the statute. On the 5th day of October, 1903, defendants filed with the probate court on account. This was about a month after the expiration of six months from the time they were appointed special administrators of the estate of Thomas A. Willson, but a month or more prior to the expiration of six months from their appointment as administrators of the partnership estate. While it is a fact that, as special administrators of the estate of Thomas A. Wilson, they operated the mill until they were appointed administrators of the partnership estate, yet they were not; under the Code, bound to file a report as administrators of the partnership estate until after the expiration of six months from the date of their appointment as such. They should have filed a report of their doings as special administrators, accounting therein for their conduct

of the mill business up to the time of their appointment as administrators of the partnership, and their next report should have run from that time. But under a misapprehension of their duties, which in my judgment shows the utmost good faith, though considerable ignorance as to the legal situation on their part, they did file a report dating from the time they took their oaths as special administrators to the expiration of six months therefrom. This report, so far as I have been able to discover, discloses only a careful and businesslike administration of that property. The only fault to be found therewith, that I can see, is, as I have already intimated, that it ran from the time of their taking as special administrators, and shows no change in their legal status at the time when they took as general administrators of the partnership. I am unable to discover anything to substantiate the charge of the plaintiff with the relation to an improper operation of the business by them.

It is patent from the evidence in this case that a great deal of personal feeling has entered into it, and there is anything but harmony between the plaintiff and these defendants. This feeling between the parties might, perhaps, be a reason for the continuance of the receivership. But a receivership is an extraordinary remedy, and of a harsh nature. It is frequently denominated a "drastic measure," and it follows, necessarily and logically, that the proceedings cannot be successfully invoked when another adequate remedy exists; and therefore the power to appoint a receiver should be exercised with circumspection and caution, and only in cases when it appears that without it the complainant will sustain irreparable loss, and when it alone will prevent manifest wrong, imminently impending, and only in cases of apparent necessity. Beach on Receivers, pp. 65, 66. The power lies in the discretion of the court, and is neither arbitrary nor absolute, and it is a well-established rule that a receiver will not be appointed

if there be any other safe and expedient remedy. If such remedy exists, it must be pursued. Conwell v. Lowrance, 46 Kan. 83, 26 Pac. 461; Jones v. Smith (C. C.) 40 Fed. 314; Pearce v. Jennings, 94 Ala. 524, 10 South. 511; Cahn v. Johnson (Tex. Civ. App.) 33 S. W. 1000; 2 Beach on Modern Equity Jurisprudence, 997, § 931; Baltimore R. R. v. Cannon, 72 Md. 493, 20 Atl. 123; Boston R. R. Co. v. B. & L. R. R. Co., 65 N. H. 593, 23 Atl. 529.

That there is an adequate remedy in the probate court cannot be denied. The Alaska Code provides the means by which the probate court may compel the administrators to account to any party interested. It has power to direct the sale of property, and in fact the very relief which the plaintiff asks in his complaint in this suit can be obtained by him in the probate court located at the point where the property is situated. It can be obtained as speedily and as efficaciously as in this court, and there is the very reason why matters of this kind should be settled in the court provided by Congress for that purpose, instead of bringing it to a different tribunal. Neither the necessity nor the expediency for the continuance of this receivership has been established.

Let an order issue directing the temporary receiver to forthwith settle his accounts discharging him from further duties as such receiver, and directing him to turn the property in his possession back to the respective officials.