Ex parte **OATES.**

Fourth Division.

Dec. 1, 1931.

Thomas B. Drayton, of Fairbanks, for petitioner.

Julien A. Hurley, U. S. Atty., and E. B. Collins, Asst. U. S. Atty., both of Fairbanks, for Lynn Smith, United States Marshal.

CLEGG, District Judge.

It is conceded by both parties to this proceeding that the justice court had jurisdiction of the person of defendant and of the offense of assault on the inception of the trial, and that the commitment itself is regular, except that it purports to authorize imprisonment for nonpayment of costs, and the effect of such a provision in the commitment is made a subject of controversy.

The main contention of petitioner, however, is that the trial proceedings were vitiated and rendered void in selecting the jury, and that therefore all subsequent proceedings were and are void and compel the petitioner's discharge from custody.

The government's attorneys contend that this court cannot now extend its inquiry beyond the judgment of conviction and issuance of commitment, and that, the jurisdiction of the trial court being conceded in the above particulars, any irregularity in drawing the jury is a mere error not reviewable by this writ, and that the court now must deny the writ and remand the prisoner.

Nothing is better settled in the law relative to the jurisdiction of a justice court than the principle that a justice court is the creature of the statute creating it, and that no intendments or presumptions will be indulged in favor of its jurisdiction, and that its jurisdiction and authority continues only so long as it confines the exercise of its powers within the limits conferred by law. In Alaska the court of a commissioner and ex officio justice of

the peace is an inferior court. 29 C.J. 99, 167; Hackleman v. Geise et al., 1 Alaska, 568, 570; Mitchell v. Galen et al., 1 Alaska, 339; Sylvester's Adm'r v. Willson's Adm'rs, 2 Alaska, 325, 332, 333, 336; United States v. Bozaravitch et al., 4 Alaska, 37, 39; Schofield v. Powell, 5 Alaska, 373, 375, 376.

The main authority cited by the United States attorney is Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009.

In that case defendant was convicted in a court of general and competent jurisdiction, namely, the "Federal District Court for the Northern District of Alabama," upon a felony charge, the record of which court recited that "a jury of good and lawful men" was impaneled. After sentence, defendant moved to amend the record to show that only eleven men sat in the case as jurors. The motion was denied; the court stating that the record was as it should be.

Later mandamus proceedings were instituted in the Supreme Court of the United States and denied (Ex parte Riddle, 255 U.S. 450, 41 S.Ct. 370, 65 L.Ed. 725), and thereafter a writ of error was taken to the Circuit Court of Appeals for the Fifth Circuit (Riddle v. U. S., 279 F. 216), where the judgment of conviction was affirmed. The point as to insufficient number of jurors was not considered by the latter court, as no exceptions were taken thereto on the trial.

Thereafter Riddle applied to the District Court for the Northern District of Georgia for writ of habeas corpus, and that court denied the same, deciding it was without authority to review the action of the trial court, which could not be impeached collaterally, being a distinct tribunal of general jurisdiction and not acting in the exercise of appellate power.

Riddle then took appeal to the Supreme Court of the United States from the order denying the writ, which order was affirmed. The Supreme Court says: "That the trial

court had jurisdiction to try and punish the appellant for the offense with which he was charged is not disputed. The attempt is collaterally to impeach the record, showing upon its face that a lawful jury was duly impaneled, sworn, and charged. Appellant's remedy, as suggested in the mandamus proceeding, was by writ of error. He did not avail himself of it, and, whatever may have been the cause or excuse for not doing so, habeas corpus cannot be used as a substitute." Riddle v. Dyche, supra.

■ The doctrine announced in the Riddle Case affords no basis of authority in support of the government's contention because the Supreme Court was speaking with reference to the record of a court of general and competent jurisdiction and not in regard to the record of a court of inferior and limited jurisdiction such as the trial court here, the justice court of Alaska. The record of the latter court is always open to attack in a habeas corpus proceeding, and when thus challenged, such court must justify its official acts at any and every stage of the proceedings, by showing that it acted within its jurisdiction.

■ Relying apparently and solely upon the Riddle Case above mentioned, the government has produced no evidence, record evidence or any other, to sustain the validity of the jury drawing and impaneling in the trial court. Neither the commissioner nor the deputy United States marshal who summoned the jury was before this court on the hearing. They were both material witnesses. I must presume failure to call either or both of these sworn officers of the law to be in favor of the claims of petitioner, and a virtual admission by the government of the truth of the testimony received in favor of petitioner as to the manner in which the jury was drawn and impaneled.

■ Reception by the court of the testimony of petitioner in his own behalf on this point was objected to by the government and by the court overruled. The argument is made that his testimony is unreliable, and, being the only

testimony in the case, should be disregarded. If it was false testimony, the government had full opportunity to expose that fact by the circumstances above adverted to, but failed to avail itself of such opportunity. Why would the petitioner, by giving false testimony on this hearing to relieve himself from punishment on a misdemeanor charge, subject himself to a greater penalty on a felony charge, the charge of perjury?

The further objection was made that such evidence was at best secondary, and that the record .was the best evidence. This was also overruled on the ground that it was not secondary but original evidence by one participating in the trial as a defendant and as being the positive testimony of an eyewitness. The court inquired if the record of the justice court was in the possession of the parties, and was answered in the negative. By a postponement of the hearing for six days, the court of its own volition and motion endeavored to secure said record, but failed. On the sixth day the hearing was resumed in the absence of such record. ,

The law requires an immediate hearing in a habeas corpus proceeding (section 1410, Compiled Laws of Alaska 1913), and the court will not acquiesce in further postponement in its endeavor to fill up the gap in the evidence caused by the absence of such record. This was a duty that rested with the attorneys and not upon the court.

In deciding this case, I will apply the rules laid down in the following short excerpts from adjudicated cases hereafter noted:

"Under a writ of habeas corpus, the inquiry is addressed, not to errors, but to the question *whether the proceedings,* and the judgment rendered therein, are, *for any reason,* nullities; and, unless it is affirmatively shown that the judgment or sentence under which the petitioner is confined is void, he is not entitled to his discharge." United States v. Pridgeon, 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631.

"The only ground on which this court, or any court, without some special statute authorizing it, will give relief on habeas corpus to a prisoner under conviction and sentence of another court is the want of jurisdiction in such court over the person or the cause, *or some other matter rendering its proceedings void.*" Ex parte Siebold, 100 U. S. 371, 375, 25 L.Ed. 717.

"An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity." In re Coy, 127 U.S. 731, 757, 8 S.Ct. 1263, 1271, 32 L.Ed. 274.

The inquiry then is: Is the judgment and commitment valid or void? If valid, the petition should be denied. If void, it should be sustained.

Our statute prescribing the manner of drawing jurors is contained in chapter 100 of the Session Laws of Alaska 1931, p. 178, sections 6 and 8 of which read as follows:

"Section 6. In the trial of all cases held by United States Commissioners as ex-officio Justices of the Peace, the jurors shall be publicly drawn from a box containing at the time of each drawing the names of at least four-fifths (4/5ths) of all persons, residents of such commissioner's district, who voted in such district at the last preceding general Territorial election, the records and returns of which are then available to the Commissioner, and who, so far as known to the Commissioner, are still residents of such district and qualified by law for jury service. For the drawing of any jury, the names of such persons shall be so placed in the jury box by the Commissioner in the presence of the parties or their attorneys and the cards or pieces of paper upon which the names of the jurors are written shall be thoroughly mixed so as to insure a fair and impartial drawing."

"Section 8. The jury box containing the names of the prospective jurors for any drawing of any jury or jurors in any of the Courts of the Territory of Alaska, and the cards or pieces of paper upon which the names of such prospective jurors have been written, may be examined by the

parties plaintiff or defendant or by any attorney authorized to practice law in the Courts of the Territory of Alaska within such limitations and under such conditions as the Court or Judge or Commissioner, as the case may be, may reasonably prescribe; and in the case of Commissioners' Courts a party to an action about to be tried or in course of trial shall have the same right. In all cases before a jury or jurors shall be drawn from the box, the box shall be well shaken by the officer making the drawing so as to thoroughly mix the cards or pieces of paper therein upon which the names of the prospective jurors are written and thus insure a fair and impartial drawing."

This act of the territorial Legislature contains explicit directions as to the formation of juries. Section 6 commences with the significant and sweeping language: "In the trial of all cases held by United States Commissioners as ex-officio Justices of the Peace."

In addition to the use of this all-inclusive phrase, the Legislature, by section 10 of the same act, for the apparent purpose of compelling obedience to its will on this subject, enacted the drastic prohibition that: "No case, either civil or criminal, shall be tried in any of the Courts of the Territory of Alaska, except in accordance with the provisions of this Act."

Section 10 in its entirety reads as follows: "Section 10. No case, either civil or criminal, shall be tried in any of the Courts of the Territory of Alaska, except in accordance with the provisions of this Act, and any violation of the provisions of this Act is hereby declared to be reversible error. Provided, however, that in any civil or criminal case, by consent and agreement of the parties given in person and by and through their attorneys, and made in writing and signed and filed in the case, a jury shall be drawn or selected in any manner upon which the parties may so agree, and such jury, so drawn and selected under appropriate order of the Court made in conformity with such agreement, shall be deemed a legal jury, and such drawing or selection shall not be deemed a violation of this Act."

What is the meaning of the language, "No case * * * shall be tried * * * except in accordance with the provisions of this Act"? Does it not mean that all the provisions of the act must be substantially complied with or no trial shall take place?

And, if the trial has commenced and issue been joined upon the defendant's plea of not guilty, and a demand made for a jury trial, either the jury shall be drawn in the manner prescribed by the act, or the trial shall then and there terminate and be at an end.

Stating it in another way, no jury shall be drawn, no evidence heard, no verdict rendered, either of acquittal or conviction, and no judgment shall be rendered, if a conviction had, and no commitment issued.

In other words, unless the jury is secured by virtual and substantial conformity with the provisions of this statute, the jurisdiction of the commissioner and ex officio justice of the peace to try the particular case is lost. Jurisdiction is generally defined as the "power and authority to try and determine," and, if the power "to try" is taken away and withdrawn, so also is the power "to determine," where the provisions of the statute are violated and not substantially complied with.

Hence, in view of the evidence submitted and of the existing statute law of this territory, I hold that in the instant case the provisions of the statute having all been violated by the justice court in securing the trial jury by which the defendant was tried and convicted and thereafter sentenced, the trial court surrendered and lost all jurisdiction to exercise judicial functions, and that, after the demand for a jury trial, all subsequent proceedings down to judgment and sentence were coram non judice, and therefore void.

Writ sustained, and petitioner ordered discharged forthwith from custody.